EMILY McHARGUE, EMPLOYEE, PLAINTIFF v. BURLINGTON INDUSTRIES, EMPLOYER, AND AMERICAN MOTORISTS INSURANCE COMPANY, CARRIER, DEFENDANTS

No. 8510IC57

(Filed 17 December 1985)

1. **Master and Servant § 68— workers' compensation—chronic lung disease—remand for proper findings**

    Plaintiff's claim to recover compensation for chronic lung disease must be remanded for findings as to whether plaintiff's exposure to cotton dust in her employment significantly contributed to, or was a significant causal factor in, the development of her disease. It was not enough that the Industrial Commission found that plaintiff's lung disease was not caused, aggravated or accelerated by her exposure to cotton dust in her employment.

2. **Master and Servant § 93.3— workers' compensation—admissibility of employer's pulmonary tests**

    Although an expert in pulmonary medicine belittled the reliability of pulmonary function tests performed by the employer, a nurse's testimony that the tests were properly administered and that the results were accurate provided the minimum evidence necessary to make the employer's test results competent evidence.

3. **Master and Servant § 68— workers' compensation—pulmonary tests—finding not supported by evidence**

    The Industrial Commission erred in finding that pulmonary function test results obtained by two pulmonary specialists were *not accurate indications of*

plaintiff's pulmonary function where there was no competent evidence tending to show that the results of tests performed by one of the specialists were not medically accurate.

APPEAL by plaintiff from opinion and award of the Industrial Commission entered 26 July 1984. Heard in the Court of Appeals 29 August 1985.

*Charles R. Hassell, Jr., for plaintiff appellant.*

*Hedrick, Eatman, Gardner & Kincheloe, by J. A. Gardner, III, for defendant appellees.*

BECTON, Judge.

## I

The plaintiff, Emily McHargue, filed her workers' compensation claim on 23 July 1980 seeking compensation for chronic lung disease caused by exposure to cotton dust. The Deputy Commissioner, in an opinion and award filed 26 January 1983, found that McHargue's exposure to cotton dust did not result in an occupational disease and denied the claim. The North Carolina Industrial Commission (Commission) affirmed the opinion and award on 26 July 1984. McHargue appeals, contending that no competent evidence supports the Commission's findings on the occupational relationship of her chronic obstructive lung disease and that this case must be remanded in light of the Supreme Court's opinion in *Rutledge v. Tultex/Kings Yarn*, 308 N.C. 85, 301 S.E. 2d 359 (1983). We remand on the ground that *Rutledge* requires further findings on the issue of significant contribution.

## II

McHargue's work history is as follows. Born in 1921, she began working for Cannon Mills in the spooling department at the age of sixteen. At seventeen, she began working at Mooresville Mills, now owned by Burlington Industries. The mill processed cotton and cotton blends. McHargue worked in Mooresville's weave room as a blow-off hand and as an inspector of cloth until the late 1950's. Both jobs exposed her to cotton dust. When Burlington bought Mooresville Mills, McHargue was laid off. She then went to work at Narrow Fabrics and at Carolina Mills in the winding department. She held each of these jobs for less than a

year. For a period of approximately fifteen years, McHargue was not employed outside the home. She returned to Burlington Mills' Mooresville Plant in 1972, again working in the weave room as a blow-off hand and later as a sweeper and in various other jobs. She was exposed to cotton dust during this period. McHargue last worked for Burlington on 19 March 1980.

As to McHargue's medical history, she testified that she had no breathing problems as a girl or young woman, although she has experienced nasal and sinus problems; that she has never smoked; and that her breathing difficulties began about three years before her retirement. According to McHargue, her early symptoms were wheezing, chest pain, and a cough. These symptoms were worse during the week; she generally felt better on Sundays. McHargue stated that her symptoms have worsened over time, but she feels better now than in 1979 when she was hospitalized.

McHargue was hospitalized for four days in February 1979 because of sore throat, cough, chest pain and congestion of a week's duration. Her final diagnosis included acute influenza with bronchitis, and pansinusitis (inflammation of one side of paranasal sinuses). She was relatively asymptomatic upon discharge, and she subsequently returned to work. McHargue was again hospitalized on 4 March 1980 at Davis Hospital in Statesville as the result of a serious episode of shortness of breath. At her 7 March 1980 discharge, McHargue was "almost entirely symptom-free," with a final diagnosis of "acute respiratory disorder with severe dyspnea recurring nightly associated with obstructive bronchial disease and accentuated by acute infection," and "pan sinusitis [sic] aggravated by acute infection." McHargue returned to work for a single day, 19 March 1980. She stated she was unable to breathe in the dusty work environment. She has not worked since.

In April 1980, McHargue was admitted to Rowan Memorial Hospital in Statesville for an elective evaluation of her pulmonary function. Her treating physician, Dr. James Reynolds, an otolaryngologist, testified for McHargue. Dr. Reynolds' discharge summary shows that pulmonary function tests were given to McHargue during this hospitalization and that her diagnosis at discharge was chronic obstructive pulmonary disease, allergic asthma and sinusitis. A 4 June 1980 letter from Dr. Reynolds to

Burlington Industries states that McHargue is "totally disabled from a pulmonary function standpoint and should not return to work." Dr. Reynolds also testified that McHargue is "short of breath even at rest."

Sometime after April 1980, McHargue was referred to Dr. Leo Heaphy, a pulmonary specialist. Dr. Heaphy ordered pulmonary function tests which were administered 1 July 1980 at Baptist Hospital in Winston-Salem and 5 May 1981 at his office. Dr. Heaphy testified that these tests all showed results in the respiratory failure range and that, in his opinion, McHargue has chronic obstructive pulmonary disease caused by her exposure to cotton dust.

The defendants' two expert medical witnesses were Virginia Lumpkin, a registered nurse who has been the plant nurse at Mooresville Mills since May 1977, and Dr. Douglas Kelling, a physician specializing in pulmonary medicine who saw McHargue on referral from the Industrial Commission on 20 October 1980. Lumpkin's testimony largely pertained to the results of the annual pulmonary function tests and respiratory questionnaires administered to McHargue by Lumpkin and others at Mooresville Mills between 1973 and 1980. Lumpkin testified that the breathing tests consistently showed McHargue to have normal pulmonary function. When questioned about the validity of the testing procedure, Lumpkin responded that although she could not say with certainty that the 1973, 1974 and 1975 tests were properly administered, the 1976, 1977, 1978, 1979 and 1980 tests were properly administered and the results were accurate.

Dr. Kelling testified that he had pulmonary function tests performed on McHargue at Cabarrus Memorial Hospital in Concord on 20 October 1980; however, he indicated that the test results did not validly reflect McHargue's pulmonary capacity, as her patient cooperation was poor. In response to a hypothetical question that incorporated the Burlington Industry pulmonary function test results from 1975 to 1980, Dr. Kelling stated that, in his opinion, McHargue is not suffering from any disease caused by exposure to cotton dust or caused otherwise from her work in a textile mill.

## III

[1]   McHargue's principal argument is that she is entitled to a remand to have the evidence in this case evaluated according to the "significant contribution" criteria articulated in *Rutledge v. Tultex/Kings Yarn*, 308 N.C. 85, 301 S.E. 2d 359 (1983). We agree. The critical holding in the *Rutledge* case is as follows:

> [C]hronic obstructive lung disease may be an occupational disease provided the occupation in question exposed the worker to a greater risk of contacting this disease than members of the public generally, and provided the worker's exposure to cotton dust significantly contributed to, or was a significant causal factor in, the disease's development. This is so even if other non-work-related factors also make significant contributions, or were significant causal factors. . . . The factual inquiry, in other words, should be whether the occupational exposure was such a significant factor in the disease's development that without it the disease would not have developed to such an extent that it caused the physical disability which resulted in claimant's incapacity for work.

*Id.* at 101-02, 301 S.E. 2d at 369-70.

The opinion and award in the instant case was entered prior to the decision in *Rutledge*. The Commission found:

> [To] the extent that plaintiff presently suffers from any impairment in pulmonary function, such impairment was caused by and has resulted from the acute respiratory illness which she experienced in March 1980. Such illness was not caused by her occupational exposure to respirable cotton dust.
>
> Plaintiff does not have byssinosis or lung disease caused, aggravated or accelerated by her exposure to cotton dust in her employment.

The Commission concluded that McHargue did not suffer from an occupational disease as a result of her employment and denied her claim.

The Commission did not, however, make any findings on the issue of "significant contribution." It is not enough under *Rutledge* to say that McHargue's lung disease was "not caused by" exposure to cotton dust in her employment. Nor does the Com-

mission's use of the terms "aggravated" or "accelerated" save its finding. For even if we were to assume that the Commission presciently anticipated the *Rutledge* standard in referring to aggravation or acceleration in its findings, we would still be compelled to remand by *Dean v. Cone Mills Corp.*, 67 N.C. App. 237, 313 S.E. 2d 11, *vacated and remanded*, 312 N.C. 487, 322 S.E. 2d 771 (1984), and *Clark v. American & Efird Mills*, 66 N.C. App. 624, 311 S.E. 2d 624 (1984), *aff'd*, 312 N.C. 616, 323 S.E. 2d 920 (1985). Both of those cases involved pre-*Rutledge* awards in which the Commission denied compensation.

In *Clark*, the Commission found, *inter alia*, that:

> 8. Respirable material in the winding room where claimant worked aggravated her cough. The cotton dust did not, however, cause *or aggravate* her basic illness which is chronic bronchitis.

> 10. Claimant experienced long-term exposure from 1943 through 26 February 1976 to causes and conditions characteristic of and peculiar to the cotton textile industry known to result in chronic obstructive pulmonary disease. The exposure did not, however, cause *or materially aggravate* her underlying pulmonary disease, which is chronic bronchitis.

66 N.C. App. at 625-26, 311 S.E. 2d at 625-26 (emphasis added). The Commission concluded:

> Claimant's pulmonary disease, chronic bronchitis, was not caused *or materially aggravated* by long-term exposure while in defendant's employ to causes and conditions characteristic of and peculiar to the cotton textile industry known to result in chronic obstructive pulmonary disease.

*Id.* at 626, 311 S.E. 2d at 626 (emphasis added). This Court in *Clark* reversed the Commission and remanded the cause for further findings in accordance with *Rutledge*. The Supreme Court affirmed. The language in *Clark* is not significantly distinguishable from the language used by the Commission in the case before us.

In *Dean*, the Commission found and concluded that:

> [P]laintiff has failed to carry his burden of establishing that his condition has been caused *or contributed to* by his exposure to cotton dust in defendant's mill, that his employ-

ment placed him at an increased risk of contracting [chronic obstructive pulmonary disease], or that he was permanently or partially disabled from employment in 1975 as a result of an occupational disease.

67 N.C. App. at 239, 313 S.E. 2d at 12 (emphasis added). This Court affirmed the Commission, and the Supreme Court vacated, stating simply that the case must be remanded for further findings in light of *Rutledge*. The Supreme Court reached its result in *Dean* despite expert testimony that "it was *medically unlikely* that Mr. Dean's occupational exposure to cotton dust *contributed to* his obstructive lung disease," and that Dean's occupational exposure "perhaps placed him at *slightly increased risk* of developing obstructive lung disease," *id.* at 238, 313 S.E. 2d at 12 (emphasis added), due in part, we suspect, to the definition of "significant" adopted in *Rutledge*. In this context "significant" does not mean "material," but rather "having or likely to have influence or effect: deserving to be considered: important, weighty, notable." *Id.* at 101-02, 301 S.E. 2d at 370 (quoting Webster's Third New International Dictionary (1971)). Because the lawyers, the Commissioners, and the physicians alike were only concerned with causation under the pre-*Rutledge* standard, *see Mills v. Fieldcrest Mills*, 68 N.C. App. 151, 154-55, 314 S.E. 2d 833, 836 (1984) (comparing pre- and post-*Rutledge* standards), this cause must be remanded for further factual findings on the issue of significant contribution.

## IV

McHargue's other argument is that no competent evidence supports certain findings of the Industrial Commission. The critical finding of fact to which McHargue assigns error reads, in its entirety, as follows:

13. Prior to March of 1980 plaintiff exhibited no demonstrable degree of a decrement in her pulmonary function, although she had suffered at least one acute episode of a respiratory infection from which she had dramatically recovered on antibiotic therapy. In early March of 1980, she suffered another acute respiratory infection from which she initially recovered rapidly, but following which she has experienced a decrease in her pulmonary function which suggests permanent obstruction. The degree to which plaintiff

has suffered permanent impairment in pulmonary function cannot be determined for the reason that pulmonary function test results obtained in March 1980 were obtained at a time when plaintiff was in acute respiratory distress and pulmonary function test results obtained thereafter by Dr. Heaphy and Dr. Douglas Kelling are not accurate indications of plaintiff's pulmonary function.

However, to the extent that plaintiff presently suffers from any impairment in pulmonary function, such impairment was caused by and has resulted from the acute respiratory illness which she experienced in March 1980. Such illness was not caused by her occupational exposure to respirable cotton dust.

It is primarily upon this factual finding (actually a mixed finding of fact and conclusion of law) that the Commission based its conclusion that McHargue does not have a lung disease caused by her exposure to cotton dust. As McHargue correctly points out, this factual finding must find support in the testimony of Dr. Kelling, as no other witness testified that McHargue did not have an occupational disease caused by exposure to cotton dust. Although the Commission erroneously focused on actual causation rather than significant contribution, we address this assignment of error because whether the facts support the Commission's conclusion that McHargue's lung disease was not *caused* by exposure to cotton dust will bear with equal directness upon the issue of significant contribution.

McHargue's argument is as follows: (1) Dr. Kelling testified that if McHargue showed "some evidence of real obstructive lung disease on pulmonary function tests," properly conducted, then he would have to say her lung disease was caused by exposure to cotton dust; (2) Dr. Heaphy's pulmonary function test results do show "some evidence of real obstructive lung disease"; and (3) the Commission erred in rejecting Dr. Heaphy's test results. Thus, considering (2) and (3) together with (1), (1) amounts to an opinion by Dr. Kelling that McHargue's lung disease was caused by cotton dust exposure. Although this argument is compelling in isolation, McHargue has taken Dr. Kelling's testimony out of context.

On direct examination, Dr. Kelling was asked by the defendant to assume several things, including the fact that McHargue

had relatively normal lung function before her 1980 illness.[1] His conclusion was that the illness must have caused the subsequent lung obstruction. On cross examination, Dr. Kelling was asked by the plaintiff to assume the same facts as he assumed on direct, except for the assumption that McHargue exhibited relatively normal lung function from 1975 to 1980. From this, Dr. Kelling felt compelled to conclude that McHargue "could have byssinosis." Defendant's theory was that McHargue's lung function was relatively normal until her illness in 1980, and thus, the illness must have caused the lung impairment. Plaintiff's theory was that her lung function was gradually declining over the years, and thus, must have been impaired as a result of cotton dust exposure.

[2] The Commission accepted defendant's theory that plaintiff had relatively normal lung function from 1975 to 1980. It found that "prior to March of 1980, plaintiff exhibited no demonstrable degree of a decrement in her pulmonary function. . . ." This finding is supported only by the Burlington Industries test results from 1975 to 1980 and the testimony of Nurse Lumpkin that these tests were properly administered and that the results were accurate. *See* n. 1, *supra*. Dr. Kelling's medical opinions were all based on hypotheticals that either assumed the validity and accuracy of the Burlington tests (thus indicating no cotton dust causal connection) or ignored them (thus indicating that cotton dust exposure must have been the cause). We hold that, although Dr. Kelling belittled the reliability of the Burlington tests, Nurse Lumpkin's testimony provides the minimum evidence necessary to make the Burlington tests competent evidence. The Commission was free to accept the Burlington tests and conclude that McHargue had not exhibited a demonstrable degree of decrement in lung function prior to March 1980. We note, however, that this finding on remand would not resolve the issue whether McHargue's occupational exposure to cotton dust significantly contributed to the development of her lung impairment after March 1980. It is entirely possible that, although her illness in March

1. This was a proper hypothetical as it assumed facts validly in evidence. Lumpkin had already testified that the Burlington Industry pulmonary function tests between 1976 and 1980 were properly administered and the results accurate. Although McHargue objected and assigned error to Lumpkin's competency to testify, she abandoned this assignment of error by failing to argue it in her brief. App. R. 28(a). Therefore, Lumpkin's testimony must be deemed competent.

1980 was the major cause of her lung impairment, McHargue's cotton dust exposure significantly contributed to the post-illness development or severity of her physical disability. *See Rutledge.*

[3]  Finally, we find merit in McHargue's argument that because no competent evidence was introduced tending to show that Dr. Heaphy's pulmonary function test results were inaccurate, it was error for the Commission to find that "pulmonary function test results obtained [after March 1980] by Dr. Heaphy and Dr. Douglas Kelling are not accurate indications of [McHargue's] pulmonary function." Although Dr. Kelling stated that because of poor patient cooperation, *his* test results were not medically accurate, there was no testimony that Dr. Heaphy's test results were not medically accurate. Although the Industrial Commission is the sole judge of credibility and weight of evidence, some competent evidence must support its findings. *See Mayo v. City of Washington,* 51 N.C. App. 402, 276 S.E. 2d 747 (1981); *see also Harrell v. J. P. Stevens & Co.,* 45 N.C. App. 197, 262 S.E. 2d 830, *disc. rev. denied,* 300 N.C. 196, 269 S.E. 2d 623 (1980) (although Commission may ultimately refuse to believe particular testimony, it must at least consider competent testimony, and may not wholly disregard or discount it). On remand, the Commission is to evaluate the results of the tests ordered by Dr. Heaphy according to these legal principles.

V

The opinion and award of the Industrial Commission is reversed, and the cause is remanded for further findings made in accordance with this opinion as to whether McHargue's exposure to cotton dust significantly contributed to, or was a significant causal factor in, the development of her chronic obstructive lung disease.

Reversed and remanded.

Judges WEBB and MARTIN concur.