GAROLD E. BALLENGER, JR., Dependent Child of GAROLD E. BALLENGER, Deceased, Through His Guardian Ad Litem, BRYAN K. HUSFELT, Employee-Plaintiff v. ITT GRINNELL INDUSTRIAL PIPING, INC., Employer, and INSURANCE COMPANY OF NORTH AMERICA, Carrier-Defendants

No. 8510IC964

(Filed 6 May 1986)

1. **Master and Servant § 94.3— workers' compensation—weighing of evidence by full Commission**

    The full Industrial Commission properly weighed the evidence in a workers' compensation case and did not act under the mistaken impression that the law required a finding in plaintiff's favor when there is any competent evidence to support such a finding.

2. **Master and Servant § 55.3— workers' compensation—water accident as cause of heart attack**

    There was ample evidence to support findings by the Industrial Commission that while the deceased employee was repairing a leak in a commode valve on the cold water line coming out of the wall, he was hit with a full volume of water from the cold water line, and that this occurrence constituted an "accident" which resulted in the employee's heart attack and subsequent death.

3. **Master and Servant § 93.3— workers' compensation—qualifications of experts**

    The Industrial Commission did not err in ruling that two physicians were qualified to give expert testimony as to whether a water incident was a cause of an employee's heart attack even though the witnesses were not specialists.

4. **Master and Servant § 93.3— workers' compensation—hypothetical questions**

    The Industrial Commission did not err in ruling that hypothetical questions posed to two medical experts assumed only facts established by the evidence either directly or by implication.

APPEAL by defendants from the opinion and award of the North Carolina Industrial Commission entered 20 March 1985. Heard in the Court of Appeals 5 February 1986.

*Pfefferkorn, Pishko & Elliott, P.A., by Robert M. Elliott, for plaintiff appellee.*

*Petree, Stockton, Robinson, Vaughn, Glaze & Maready, by Robert J. Lawing and Jane C. Jackson, for defendant appellant.*

BECTON, Judge.

Defendants ITT Grinnell and Insurance Company of North America appeal from an opinion and award of the Industrial Commission (Commission) to plaintiff Garold E. Ballenger, Jr., dependent child of the deceased, Garold E. Ballenger, Sr. The Commission awarded plaintiff's dependent $195.90 per week for four hundred weeks.

Mr. Ballenger was an employee of ITT Grinnell Industrial Piping, Inc., and was working at the ITT Grinnell plant in Winston-Salem, North Carolina on 14 May 1981. Mr. Ballenger, who performed plumbing repairs as a normal part of his job, was instructed to repair a leak in a restroom at the plant. The leak was in a commode valve on a cold water line coming out of the wall. Mr. Ballenger, working alone, apparently neglected to turn the water off before attempting to make the repair. Consequently, when he unscrewed the valve, the full volume of the cold water came gushing out.

James Johnson, Mr. Ballenger's immediate supervisor, came into the restroom shortly thereafter and saw Mr. Ballenger "completely drenched, soaking wet from head to toe," standing by the commode, water flowing from the wall and three to four inches of it on the floor. Mr. Johnson testified that Mr. Ballenger was very upset and excited at this point. Mr. Ballenger was sent home to change into dry clothing. When he returned he appeared quite pale, seemed short of breath, and was still visibly upset. As a result, James Wall, the manager of the maintenance department, instructed one of the employees, Steve Sink, to drive Mr. Ballenger home at approximately 3:00 p.m. Mr. Sink and Mr. Ballenger's niece had to assist Mr. Ballenger into the house. At home, Mr. Ballenger was very slow to respond to questions, and his color was "pale, blue." He complained of a burning sensation in his chest and lack of feeling in his legs.

At approximately 4:00 p.m., Mr. Ballenger was taken to the emergency room at North Carolina Baptist Hospital by the rescue squad and treated for a possible heart attack. He died at approximately 9:35 that night. The immediate cause of his death was an acute myocardial infarction, or heart attack.

The deputy commissioner denied plaintiff's claim that Mr. Ballenger was injured in the course of his employment with de-

fendant by "a sudden break in the water line which caused a substantial torrent of cold water suddenly to pour onto the deceased, resulting in extra exertion due to shock thereby causing his heart attack and death." The deputy commissioner ruled that the accident was not the cause of any injury to Mr. Ballenger and that his subsequent death from a myocardial infarction did not arise out of his employment with defendant.

The Commission found as a fact that the acute myocardial infarction suffered by Mr. Ballenger and which ultimately caused his death occurred on the afternoon of 14 May 1981, and that it was caused or precipitated by the "water incident episode with its associated related stress at defendant employer's plant." Defendants employer and insurance company appeal.

I

[1] Defendants first contend that the Commission applied an improper standard of review and that the Commission erroneously viewed the totality of the evidence in the light most favorable to the plaintiff, impermissibly shifting the burden of proof from plaintiff to defendants. Defendants cite a recent decision of this Court, *Cauble v. The Macke Co.*, 78 N.C. App. 793, 338 S.E. 2d 320 (1986) as authority for the proposition that the Commission acts under a misapprehension of the law if it applies the appellate standard of review by finding in plaintiff's favor when there is *any* competent evidence to support such a finding. *Cauble*, 78 N.C. App. at 795, 338 S.E. 2d at 322.

We do not believe that our holding in *Cauble* dictates the result that defendants would have us reach here. Nor do we believe the Commission acted under a misapprehension of the law in this case. The Commission set out the well-established legal principles which guided its review of the evidence in a very thorough memorandum preceding its findings of fact and conclusions of law. Given the legislative policy underlying the Workers' Compensation Act, which requires the Commission and the courts to construe its provisions liberally in favor of the injured worker, it was entirely proper for the Commission, after considering all of the evidence, to view the expert testimony in the light most favorable to the plaintiff. *See Cates v. Hunt Construction Co.*, 267 N.C. 560, 563, 148 S.E. 2d 604, 607 (1966).

Recognizing that there was conflicting medical testimony regarding the effect of the water episode on the deceased, the Commission required the plaintiff to establish, by competent expert testimony, the causal relationship between the accident and the injury. The Commission stated:

> In the present case, three medical expert witnesses, Dr. Sessler, Dr. Walley and Dr. Reimer all testified that the "water incident" occurring on the afternoon of May 14, 1981, could or might have caused or precipitated decedent's acute myocardial infarction. A fourth medical expert witness, Dr. Gaddy, on cross examination also testified that "the incident at work did play a major role." Of the seven medical expert witnesses who testified in this case, five agreed that the decedent's heart attack which ultimately caused his death occurred on the afternoon of May 14, 1981. These five medical experts were Dr. Sessler, Dr. Walley, Dr. Reimer, Dr. Gaddy, and Dr. Johnston.

On this basis, the Commission held that there was "competent evidence in the record sufficient to establish a causal relationship between the accident and the deceased's injury."

When the evidence before the Commission is such as to permit either of two contrary findings, its determination is conclusive on appeal. *Taylor v. Twin City Club*, 260 N.C. 435, 132 S.E. 2d 865 (1963). All that *Cauble* requires is that the Commission weigh the evidence before it concludes that there is some evidence to support a finding in plaintiff's favor.

## II

[2]  Defendants assert that plaintiff offered no competent evidence to establish the circumstances of Mr. Ballenger's alleged accident or that he suffered a compensable injury by accident while performing his job for defendant employer. In particular, defendants except to the Commission's finding of fact that Mr. Ballenger "was hit with a full volume of gushing cold water." It is not disputed that Mr. Ballenger was engaged in a duty (repairing a leak) which he was authorized to undertake and which directly benefited his employer at the time of the water incident. It is also undisputed that when Mr. Johnson arrived on the scene he observed that Mr. Ballenger was "drenched," "soaking wet," "liter-

ally [wet] all over," "on his front and on his back," "totally." According to Mr. Johnson, "there was water gushing out from the hole where the valve is supposed to be." Mr. Johnson was able to infer from his experience in the maintenance department that Mr. Ballenger had "screwed the wrong thing out of the pipeline, screwed the whole valve itself rather than shutting it off" and that with this valve removed, "the full volume [of the water that is in the pipe] is coming out."

The logical inference is that Mr. Ballenger was hit with a full volume of gushing water. Accident and effect do not have to be established by eyewitnesses or to a mathematical or scientific certainty. *Snow v. Dick & Kirkman, Inc.*, 74 N.C. App. 263, 267, 328 S.E. 2d 29, 32, *disc. rev. denied*, 314 N.C. 118, 332 S.E. 2d 484 (1985). Furthermore, inferences from circumstances when reasonably drawn are permissible, and the fact that other reasonable inferences could have been drawn is no indication of error; deciding which permissible inference to draw from evidentiary circumstances is as much within the fact finder's province as is deciding which of two contradictory witnesses to believe. *Id.*

There was ample evidence from which the Commission could reasonably infer that plaintiff was drenched with a full volume of water from the cold water line. This was an interruption of the normal work routine and the introduction of an unusual condition likely to result in unexpected consequences, and was therefore an "accident" within the meaning of the Workers' Compensation Act. *See Porter v. Shelby Knit, Inc.*, 46 N.C. App. 22, 26, 264 S.E. 2d 360, 363 (1980).

We now turn to defendants' contention that even if Mr. Ballenger were hit with a full volume of gushing water, there was no evidence that it was "cold" water. Defendants assign as error that the Commission took judicial notice "that water from a cold-water line is colder than the temperature of the human body." N.C. Gen. Stat. Sec. 8C-1, Rule 201 (Cum. Supp. 1983) provides:

A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

It is generally known, as plaintiff asserts, that water from a cold water line is *at least* cool to the touch and therefore colder than body temperature, which is normally 98.6 degrees Fahrenheit. The difference between "cold" and "hot" water, and the various gradations of each, also is generally known. Although one may not know the precise or even the approximate temperature of cold water, one knows it when one feels it. There was no evidence that anything but "cold water," the temperature to the touch of which is commonly known, flowed into the cold water line at the ITT Grinnell plant.

Mr. Ballenger's case does not rise or fall on the precise temperature of the water in the cold water line at the time of the accident. The hypothetical question posed to each of the medical experts required them to consider the effect of Mr. Ballenger's being hit with a full volume of water from the cold water line. Expert witnesses testified that the water incident could have caused the vaso-constriction of the blood vessels or arterial spasm, either of which would have reduced the amount of blood going to the heart and increased the pressure on the heart muscle. This, they say, could have triggered the heart attack. In the alternative, the experts testified that the stress and excitement resulting from the water incident could have placed an increased demand on his already diseased heart, thus precipitating the myocardial infarction. The precise temperature of the water was not material to this determination.

We conclude that the Commission did not err in taking judicial notice, as it did here, and therefore that defendants were not prejudiced.

## III

[3]  Defendants next challenge the competency of certain medical evidence both as to the qualifications of several of the expert witnesses and the validity of the hypothetical question posed to them. In ruling that the water incident was not a cause or precipitating factor in the myocardial infarction, the deputy commissioner excluded the testimony of Dr. Sessler on the issue of causation and of Dr. Walley entirely.

The Commission, however, found that Drs. Sessler and Walley "surely qualif[ied] as experts based upon [the following] well-recognized principles of law . . .":

"The qualifications of a medical expert are judged in the same manner as those of experts in general. He is not disqualified merely because he belongs to some particular school of medical thought or practice, *or is not a specialist,* or has no license to practice medicine, or has had little or no experience with the precise subject." . . .

"It is enough that, through study or experience, or both, he is better qualified than the jury to form an opinion on the particular subject."

(quoting 1 Stansbury, North Carolina Evidence, Secs. 133, 135 (Brandis Rev. 1982) ) (emphasis added).

In addition, the question whether none but a specialist can testify as an expert is not a matter of judicial discretion but rather is a question of law subject to review by the appellate courts. *See Robinson v. J. P. Stevens,* 57 N.C. App. 619, 624, 292 S.E. 2d 144, 147 (1982). A medical witness need not, as a matter of law, be a specialist in a particular subject to give an opinion on it. *Id.*

It was entirely proper for the Commission to include the testimony of Drs. Sessler and Walley in its determination of the facts and evidence. "The plenary powers of the Commission are such that upon review, it may adopt, modify or reject the findings of fact of the Hearing Commissioner, and in doing so may weigh the evidence and make its own determination as to the weight and credibility of the evidence." *Cauble,* 78 N.C. App. at 795, 338 S.E. 2d at 321. The Commission did not err by qualifying Drs. Sessler and Walley and relying in part on their testimony to reach a decision contrary to that of the deputy commissioner.

[4] The defendants also argue that the hypothetical questions on which the expert opinions were based were improper because they assumed facts not in evidence and omitted others that were in evidence. The Commission concluded that the hypothetical question "assumes only facts which were established by the evidence either directly or by fair and necessary implication."

Although under the new evidence code hypothetical questions are not required, they are still permitted. *See* G.S. Sec. 8C-1, Rule 705 (Cum. Supp. 1983). To be acceptable, a hypothetical question must (1) list only such facts as are directly in evidence *or*

*may justifiably be inferred therefrom*, (2) list enough facts to allow the witness to express an intelligent and safe opinion and (3) make it clear that the opinion is based on the hypothesis that the facts listed will be found by the finder of fact to exist. 1 Stansbury, North Carolina Evidence, Sec. 137 (Brandis Rev. 1982) (emphasis added).

Counsel may form the question "on any theory which can be deduced from the evidence and select as a predicate therefor such facts as the evidence reasonably tends to prove," leaving adversaries to protect themselves on cross-examination. *Id.* (quoting *Dean v. Carolina Coach Co.*, 287 N.C. 515, 215 S.E. 2d 89 (1975)).

Even the omission of a material fact from a hypothetical question does not necessarily render the question objectionable, or the answer incompetent. *See Robinson*, 57 N.C. App. at 622, 292 S.E. 2d at 146; *Dean*, 287 N.C. at 519-20, 215 S.E. 2d at 92.

It is left to the cross-examiner to bring out facts supported by the evidence that have been omitted and thereby determine if their inclusion would cause the expert to modify or reject his or her earlier opinion. *Id.*

We have examined the hypothetical questions posed to the medical witnesses and reject defendants' contention that the answers should have been excluded as incompetent. Defendants reiterate the objection to inferences that may be drawn from the evidence and argue that the medical experts should not have been allowed to give an opinion based on the following recitation of the facts:

> Mr. Ballenger was attempting to repair a leak in a commode when a valve in the . . . cold water line . . . came out and hit [him] with a full volume of water. That immediately following this incident Mr. Ballenger was upset and soaking wet. . . . At approximately two to three o'clock p.m. Mr. Ballenger was unusually quiet, displayed some shortness of breath and was pale.

We hold that the evidence reasonably tends to prove the facts presented by plaintiff in the hypothetical question and that plaintiff's theory of the precipitating events of the deceased's heart attack properly can be deduced from that evidence.

We affirm the opinion and award of the Industrial Commission based on its conclusion that "the deceased Ballenger sustained a compensable injury arising out of and in the course of his employment with defendant employer which resulted in an acute myocardial infarction and his subsequent death" on 14 May 1981.

Affirmed.

Judges JOHNSON and MARTIN concur.