EDWARD L. HAPONSKI, EMPLOYEE, PLAINTIFF v. CONSTRUCTOR'S INC., EMPLOYER v. IOWA NATIONAL MUTUAL INS. CO., CARRIER, DEFENDANTS

No. 8610IC1124

(Filed 15 September 1987)

1. **Master and Servant § 93.3— workers' compensation—expert opinion testimony —competency**

There was no merit to defendant's contention in a workers' compensation proceeding that an expert's testimony as to the cause of plaintiff's depression was elicited in response to an allegedly improper hypothetical question, since

the witness could properly base his opinion on plaintiff's statements made to him for treatment, on plaintiff's own prior testimony, and on another physician's notes made during treatment of plaintiff. Furthermore, the witness could properly testify that plaintiff's depression reduced "whatever [work] capacity" plaintiff had at the time of an earlier hearing, and the witness did not need personal knowledge of plaintiff's capacity to work at the earlier time in order to state his opinion.

**2. Master and Servant § 93.3— workers' compensation—expert opinion not speculative**

There was no merit to defendant's contention in a workers' compensation proceeding that a medical expert's opinion was too speculative to be competent evidence of the relationship between plaintiff's pain and depression.

**3. Master and Servant § 77.1— workers' compensation—change of condition**

Plaintiff in a workers' compensation proceeding established a significant change of condition under N.C.G.S. § 97-47 where he offered competent testimony that his depression subsequent to a 1983 appeal of the case was caused by his compensated 1980 injury and that this depression adversely affected his capacity to work.

APPEAL by defendants from opinion and award of the North Carolina Industrial Commission filed 21 May 1986. Heard in the Court of Appeals 11 March 1987.

Pursuant to a hearing conducted on 12 January 1983, the North Carolina Industrial Commission (hereinafter, the "Commission") awarded plaintiff compensation for certain back injuries he sustained in October 1980. In an earlier appeal of that award, *Haponski v. Constructor's Inc.*, 71 N.C. App. 786, 323 S.E. 2d 46 (1984), this Court affirmed the Commission's January 1983 conclusion that the October 1980 injury left plaintiff with a 20% permanent partial disability of his back which reached maximum medical improvement on 17 August 1982.

In January 1984, plaintiff gave notice of an alleged "change of condition" under N.C.G.S. Sec. 97-47 (1985). Based principally on the testimony of plaintiff and plaintiff's medical experts, the hearing commissioner found that, from 6 April 1983 until 16 July 1984, plaintiff could not work due to psychiatric problems caused by his October 1980 injury. The hearing commissioner therefore concluded that the emergence of defendant's psychiatric problems since the Commission's prior final award constituted a significant change of condition under Section 97-47. She awarded plaintiff additional compensation based on her determination that plaintiff

had suffered a temporary total disability. The Full Commission affirmed the hearing commissioner's opinion and award in all respects. Defendants appeal.

*Smith, Patterson, Follin, Curtis, James & Harkavy, by Henry N. Patterson Jr. and Jonathan R. Harkavy, for plaintiff-appellee.*

*Russ, Worth & Cheatwood, by Walker Y. Worth, Jr., for defendant-appellants.*

GREENE, Judge.

Our review of the Commission's award is limited to determining whether any competent evidence supported the Commission's findings and whether such findings are legally sufficient to support the Commission's conclusions of law. *McLean v. Roadway Express, Inc.*, 307 N.C. 99, 102, 296 S.E. 2d 456, 459 (1982). The instant case specifically presents the following issues for review: (I) whether any competent evidence supported the Commission's findings (A) where expert testimony on the cause of plaintiff's depression and reduced work capacity was elicited in response to allegedly improper hypothetical questions, and (B) where such testimony was allegedly too uncertain or speculative to support the Commission's findings; and (II) whether the Commission's findings support its conclusion that, under Section 97-47, plaintiff underwent a significant change of condition which was caused by his October 1980 injury.

Strictly speaking, the rules of evidence applicable in our general courts do not govern the Commission's own administrative fact-finding. *Compare* N.C.G.S. Sec. 8C-1, Rule 1101 (1986) (rules of evidence apply to all proceedings in "courts of this state") *with* N.C.G.S. Sec. 97-80(a) (1985) (Commission processes and procedures shall be "as summary and simple as reasonably may be"); *see also Tindall v. American Furniture Co.*, 216 N.C. 306, 310, 4 S.E. 2d 894, 896 (1939) (findings not overturned simply because some evidence offends courtroom rules of evidence); *Maley v. Thomasville Furniture Co.*, 214 N.C. 589, 594, 200 S.E. 438, 441 (1938) (Commission need not conform to court procedure unless required by statute or to preserve justice and due process). However, in determining on review whether any "competent" evidence supports the Commission's findings, we must by definition apply those courtroom evidentiary rules and principles which

embody the legal concept of "competence." *See, e.g., Thompson v. Lenoir Transfer Co.,* 72 N.C. App. 348, 350, 324 S.E. 2d 619, 620-21 (1985) (citing N.C.G.S. Sec. 8C-1, Rules 703 and 705 as basis for concluding expert opinion based on prior testimony was admissible and competent in Commission case); *but cf.* 3 A. Larson, Workmen's Compensation Law Secs. 79.23-24 (1983) (criticizing this "legal residium" standard of review).

I

In determining whether any competent evidence supports the Commission's findings, we note the following disputed findings:

4. On 6 April 1983, plaintiff did seek psychiatric help. At this time, plaintiff had depression secondary to pain. He experienced problems sleeping, cried for no reason, and lost weight. In addition, he had a low libido, a poor memory, and very little energy.

5. From 6 April 1983 until 16 July 1984 when plaintiff returned to work, plaintiff was unable to work. This was due to psychiatric problems which worsened after the previous hearings in this matter, and these problems constituted a change in condition.

We also note that the Commission's "Conclusion of Law" Number "1" states plaintiff's psychiatric problems "were caused by his 20 October 1980 injury by accident . . . ." As determining the cause of plaintiff's psychiatric problems is a mixed question of law and fact, the Commission's designations of "findings" and "conclusions" are not binding on this court. *See Brown v. Charlotte-Mecklenburg Board of Education,* 269 N.C. 667, 670, 153 S.E. 2d 335, 338 (1967). Therefore, we will here examine the competency of any causation evidence and later analyze whether that evidence is legally sufficient to conclude plaintiff's October 1980 injury caused his depression.

Our review of evidence supporting these findings reveals that plaintiff's psychiatrist, Dr. Maltbie, testified he first saw plaintiff on 6 April 1983 and diagnosed certain symptoms of depression. Plaintiff's counsel then asked Dr. Maltbie several long hypothetical questions about the cause and progress of plaintiff's depression and its effect on his earning capacity. In the course of these questions, counsel asked Dr. Maltbie to assume, among

other things, that "following January 12, 1983 [the date plaintiff's original claim was heard] . . ., [plaintiff] bec[a]me more depressed, *as he has testified* . . ." [emphasis added]. Counsel also asked Dr. Maltbie to assume the findings of a "New Orthopedic Note" drafted in December 1982 by Dr. Harrelson, an attending orthopedic surgeon, in which Dr. Harrelson noted plaintiff's "chronic pain."

Counsel then asked Dr. Maltbie whether "there was a substantial deterioration in [the] psychological or emotional component of [plaintiff's] October 20, 1980 injury, from January 13 [sic], 1983 through the date you first saw him on April 6, 1983." Dr. Maltbie responded:

> Yeah, based on these facts, I would say that he did certainly get depressed. He was depressed when I saw him. If he was not before, then he must have gotten depressed since that time [*i.e.*, since the 12 January 1983 hearing on plaintiff's original back injury].

Based on the same hypothetical assumptions, counsel then asked Dr. Maltbie the following questions:

> Q. Did the deterioration in the nature of the severity of the depression substantially reduce further whatever capacity that [plaintiff] had in January 1983 to work and earn wages?
>
> . . .
>
> A. Yes, sir.
>
> . . .
>
> Q. Do you have an opinion as to whether or not the depressive condition you have diagnosed, beginning at least in April 1983, was caused by the physical injury on . . . October 20, 1980 and the pain and impairment that the Industrial Commission . . . found . . . resulted from that injury?
>
> A. I do believe the depression is secondary to the pain which is secondary to the injury.

### A

[1] As Dr. Maltbie had no direct personal knowledge of plaintiff's condition *prior* to the 6 April 1983 visit, defendants

first argue the question whether plaintiff's psychological condition deteriorated *after* January 1983 assumed plaintiff became more depressed after January 1983. Defendants assert the question therefore sought to establish a critical fact not in evidence and improperly assumed its own conclusion. *Cf. Goble v. Helms*, 64 N.C. App. 439, 444, 307 S.E. 2d 807, 811, *disc. rev. denied*, 310 N.C. 625, 315 S.E. 2d 690 (1984) (hypothetical question should not assume facts sought to be established).

Although hypothetical questions are no longer required to elicit expert opinion under Rule 705, such questions are nevertheless permitted. An interrogator may form his hypothetical question on any theory which can be deduced from the evidence and may select as a predicate such facts as the evidence reasonably tends to prove. *Hairston v. Alexander Tank & Equip. Co.*, 310 N.C. 227, 243, 311 S.E. 2d 559, 570 (1984). Whether the expert's opinion is elicited by hypothetical or direct questioning, the opinion need not be based solely on the expert's personal knowledge. *See Booker v. Duke Medical Center*, 297 N.C. 458, 478-79, 256 S.E. 2d 189, 202 (1979) (in response to hypothetical question, doctor could base opinion on plaintiff's prior testimony and medical history obtained from plaintiff or from other treating physician); *Thompson*, 72 N.C. App. at 350, 324 S.E. 2d at 621 (expert's personal knowledge of plaintiff's state of mind deemed irrelevant under Rules 703 and 705 since basis for opinion available in record or upon demand).

Prior to these hypothetical questions, Dr. Maltbie had recounted how plaintiff described his post-January 1983 physical symptoms during plaintiff's initial interview in April 1983. Furthermore, plaintiff had himself previously testified without objection that he became "more depressed" between "the last hearing on January 12, 1983," and the time plaintiff was "first seen" on 6 April 1983. As defendants have not challenged the competency of plaintiff's testimony, plaintiff's testimony must be deemed competent. *See McHargue v. Burlington Indus.*, 78 N.C. App. 324, 332 n.1, 337 S.E. 2d 584, 588 n.1 (1985). Under *Booker*, plaintiff's statements made to Dr. Maltbie for treatment and his own prior testimony reasonably tended to prove the fact of plaintiff's depression after 12 January 1983. Therefore, counsel's hypothetical question could assume that fact for the purpose of eliciting Dr. Maltbie's opinion. *See Ballenger v. ITT Grinnell Indus. Piping*,

*Inc.*, 80 N.C. App. 393, 399-400, 342 S.E. 2d 582, 587, *aff'd in part and rev'd in part on rehearing*, 83 N.C. App. 55, 348 S.E. 2d 814, *modified and aff'd*, 320 N.C. ---, 357 S.E. 2d 683 (1987) (Court of Appeals discusses requirements for hypothetical assumptions after new evidence code).

We recognize the question whether plaintiff's "psychological or emotional component" deteriorated after January, 1983, directed Dr. Maltbie to assume, among other things, plaintiff's testimony that he became "more depressed" after January 1983. Dr. Maltbie answered, "Based on these facts, I would say [plaintiff] did certainly get depressed." The question does not illogically assume its answer: Dr. Maltbie's *medical* opinion of plaintiff's alleged psychological or emotional deterioration after January 1983 was simply based in part on plaintiff's own testimony as well as plaintiff's direct complaints during the April 1983 interview. Dr. Maltbie's opinion was not identical to plaintiff's testimony, but was instead partially based upon it.

Defendants' objection to Dr. Maltbie's assuming the findings of Dr. Harrelson's note is similarly premised on the erroneous notion Dr. Maltbie's opinion could only be based on personal knowledge. As the result of his physical examination of plaintiff and plaintiff's own statements made for treatment, Dr. Harrelson observed in his December 1982 note that plaintiff had a "chronic pain problem." Since the facts and data underlying Dr. Harrelson's note are reasonably relied upon by physicians, counsel could assume the findings in the note regardless of the note's admissibility. N.C.G.S. Sec. 8C-1, Rule 703 (1983). The question did not ask Dr. Maltbie merely to assume the opinion of another doctor who had never treated plaintiff's condition. *Cf. Donovan v. Hudspeth*, 318 N.C. 1, 24, 347 S.E. 2d 797, 811 (1986) (excluding expert opinion based solely on opinion of another non-treating physician).

Defendants also contend the question concerning plaintiff's reduced work capacity was improper because the question offered no assumption about plaintiff's work capacity in January 1983. However, Dr. Maltbie had already testified that his initial interview with plaintiff led him to believe that plaintiff's depressive symptoms interfered "in a major way . . . with [plaintiff's] ability to function . . . in any employment capacity." As plaintiff's initial complaints were statements made for the purpose of treating his

depression, plaintiff's statements were a proper basis for Dr. Maltbie's opinion that plaintiff's depression reduced "whatever [work] capacity" plaintiff had in January 1983. Dr. Maltbie could also answer the question based on plaintiff's prior testimony which itself tended to prove his capacity to work deteriorated after January 1983. Given this evidence of plaintiff's chronic pain, increasing depression and impaired work capacity after January 1983, Dr. Maltbie did not need personal knowledge of plaintiff's capacity to work as of January 1983 in order to state his medical opinion that the effects of plaintiff's depression reduced "whatever" work capacity plaintiff possessed. In passing, we also reject defendant's contention that the hypothetical question posed to Dr. Maltbie improperly asked for a direct answer rather than an "opinion to a reasonable medical certainty." *See Cherry v. Harrell*, 84 N.C. App. 598, 604, 353 S.E. 2d 433, 437 (1987) (expert opinions no longer need be stated to a reasonable medical certainty).

Since the evidence reasonably tended to prove the assumptions underlying counsel's disputed questions, we conclude Dr. Maltbie's answers to those questions were properly admitted and competent.

B

[2] Defendants also note that, during his cross-examination, Dr. Maltbie related plaintiff's complaints of financial difficulties, domestic worries and medication problems. The doctor also testified that depression in general could be caused by stress, medication and heredity. During his direct examination, Dr. Maltbie testified: "It's hard for me to say *at this point* whether the stresses external to Mr. Haponski depress him and have a secondary rise in pain experience or vice versa. I really can't comment on that . . ." (emphasis added). Defendants contend this testimony demonstrates the doctor's opinion was too speculative to be competent evidence of the relationship between plaintiff's pain and depression.

However, defendants misconstrue Dr. Maltbie's statement that it was "hard" for him to say whether "the stresses external to Mr. Haponski depress him and have a secondary rise in pain experience or *vice versa*" (emphasis added). Dr. Maltbie's statement that it was "hard" for him to speak on the issue does not demonstrate the doctor's positive opinion expressed elsewhere was based on sheer guesswork or speculation. *Cf. Ballenger v.*

*Burris Indus.*, 66 N.C. App. 556, 567, 311 S.E. 2d 881, 887, *disc. rev. denied*, 310 N.C. 743, 315 S.E. 2d 700 (1984) ("educated guess" amounted to mere speculation and was thus incompetent). Furthermore, the question posed referred to the period from plaintiff's discharge from the Duke pain program in June 1983 until the day before Dr. Maltbie's testimony. The transcript reveals the doctor was merely *refusing* to speculate whether the financial and domestic stresses previously noted caused plaintiff to "redepress" and experience a "rise in pain" several months *after* the April 1983 interview. *Cf. Buck v. Proctor*, 52 N.C. App. 88, 95, 278 S.E. 2d 268, 273 (1981) (failure to choose single most probable cause was proper refusal to speculate). In addition, Dr. Maltbie's use of the phrase "vice versa" arguably refers only to his refusal to speculate whether plaintiff's pain and depression *after* April 1983 contributed to the stress of plaintiff's financial and domestic difficulties: the statement does not demonstrate Dr. Maltbie was confused whether plaintiff's depression was "secondary" to his chronic pain as of April 1983.

Dr. Maltbie's cross-examination did reveal factors other than plaintiff's pain to which his depression may arguably have been "secondary." However, the existence of other possible causes of plaintiff's depression does not itself negate either the competency or probative value of Dr. Maltbie's explicit opinion that plaintiff's depression was secondary to his pain as of 6 April 1983. *See Cherry*, 84 N.C. App. at 605, 353 S.E. 2d at 437 (existence of other possible causes of plaintiff's ruptured disk could reduce weight of opinion but did not render opinion incompetent under Rules 702 and 705); *Buck*, 52 N.C. App. at 95-96, 278 S.E. 2d at 273 (expert opinion on cause of plaintiff's injury was deemed competent although expert conceded other causes were "equally probable").

Having rejected defendants' challenges to Dr. Maltbie's testimony and having noted plaintiff's own relevant testimony, it is clear the Commission's findings were sufficiently supported by competent evidence: Commission Finding Number Four that plaintiff had "depression secondary to pain" was supported by Dr. Maltbie's previously discussed testimony as well as by his specific statement that, as of 6 April 1983, defendant had chronic pain "with a major factor in his inability to function being a secondary depression." The testimonies of plaintiff and Dr. Maltbie also constituted competent evidence supporting Commission Finding

Number Five that plaintiff's work capacity had been reduced by his psychiatric problems. As to the Commission's statement that plaintiff's "psychiatric problems were caused by his 20 October 1980 injury," we note defendants themselves offered no direct evidence contradicting the competent testimony of either plaintiff or Dr. Maltbie. As trier of fact, the Commission was entitled to accept Dr. Maltbie's opinion on causation and discount defendant's own speculative construction of that testimony. So long as there is "some evidence" supporting the Commission's finding on causation, this Court will not overturn that finding. *See Buck*, 52 N.C. App. at 96, 278 S.E. 2d at 273.

We therefore find ample competent evidence supporting the Commission's disputed findings. As defendants' other factual arguments only contend the Commission should have weighed the evidence differently, we find those arguments meritless.

## II

[3] In relevant part, Section 97-47 provides that "on the grounds of a change in condition" the Commission may review any award and end, diminish, or increase the compensation previously awarded. As our Supreme Court stated in *McLean*:

> Change of condition 'refers to conditions different from those existent when the award was made; and a continued incapacity of the same kind and character and for the same injury is not a change of condition . . . [T]he change must be actual, and not a mere change of opinion with respect to the pre-existing condition.' [Citation omitted.] Change of condition is a substantial change, after a final award of compensation, of physical capacity to earn and, in some cases, of earnings.

307 N.C. at 103-04, 296 S.E. 2d at 459 (quoting *Pratt v. Central Upholstery Co.*, 252 N.C. 716, 722, 115 S.E. 2d 27, 33-34 (1960) ). The remaining issue is whether Commission Findings Numbers Four and Five and its "Conclusion" Number One legally justified its conclusion that plaintiff's October 1980 injury caused his depression and that this depression constituted a change of condition under Section 97-47.

As to the cause of plaintiff's depression, we find the Commission had ample precedent under these facts to conclude that plaintiff's 1980 injury caused his subsequent psychiatric problems.

*E.g., Fayne v. Fieldcrest Mills, Inc.,* 54 N.C. App. 144, 282 S.E. 2d 539, *disc. rev. denied,* 304 N.C. 725, 288 S.E. 2d 380 (1982); *see also Petty v. Associated Transport, Inc.,* 276 N.C. 417, 430, 173 S.E. 2d 321, 331 (1970).

As to whether plaintiff's depression constituted a "change of condition" under the statute, we have stated "that if an employee receives an injury which is compensable and the injury causes her to become so emotionally disturbed that she is unable to work, she is entitled to compensation for total incapacity under G.S. 97-29." *Fayne,* 54 N.C. App. at 146, 282 S.E. 2d at 540; *see also Hubbard v. Burlington Indus., Inc.,* 76 N.C. App. 313, 317, 332 S.E. 2d 746, 748 (1985) (when Commission originally finds permanent partial disability, later Commission finding based on additional evidence of plaintiff's total disability will support conclusion condition has changed). Dr. Maltbie testified plaintiff's depression subsequent to January 1983 was caused by his compensated 1980 injury and that this depression adversely affected his capacity to work: we therefore hold under *Petty* and *Fayne* that plaintiff established a significant change of condition under Section 97-47. *See Fayne,* 54 N.C. App. at 146, 282 S.E. 2d at 540; *cf. Burrow v. Hanes Hosiery, Inc.,* 66 N.C. App. 418, 422, 311 S.E. 2d 30, 33, *aff'd,* 311 N.C. 297, 316 S.E. 2d 63 (1984) (where experts testified before and after original award that plaintiff's incapacity to earn was based on "pain," finding that "depression" increased after award did not support conclusion condition had changed).

Defendants' remaining assignments of error concern the Commission's awarding plaintiff temporary disability compensation and medical expenses. These arguments restate challenges to the Commission's findings and conclusions which we have already rejected and are therefore meritless.

Affirmed.

Judges ARNOLD and MARTIN concur.