This case was initially heard on 31 May 1995 before Deputy Commissioner Douglas Berger in Durham, North Carolina. Deputy Commissioner Berger issued an Opinion and Award on 28 November 1995. Plaintiff appealed this decision and the Full Commission entered an Opinion and Award by Chairman Howard Bunn, Jr., on 26 September 1996.
***********
Upon review of the competent evidence of record with respect to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, adopts with minor modifications the Opinion and Award of Deputy Commissioner Young.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer at all relevant times herein.
3. Liberty Mutual Insurance Company was the carrier on the risk at all relevant times herein.
4. Plaintiff was injured at work for defendant-employer on 18 June 1997.
5. The parties stipulated to the Industrial Commission Form 33 dated 5 June 1996.
6. The parties stipulated to a copy of an Industrial Commission Form 21 approved on 7 May 1991.
7. The parties stipulated to an Industrial Commission Form 24 application approved on 31 March 1994. This application includes a one-page job description and a letter dated 23 February 1994, from Dr. Friedman to Ms. Watkins.
8. The parties stipulated to defendants Response to plaintiffs First Set of Interrogatories.
9. The parties stipulated to a letter dated 10 May 1994, from Martha Barr to attorney James Walker.
10. The Deputy Commissioner accepted into evidence at the call of this case for hearing the previous decisions of Deputy Commissioner Berger and Chairman Bunn filed 28 November 1995 and 26 September 1996, respectively, and all previous documents and depositions listed below which were previously entered into the record as a result of the 31 May 1995 hearing before Deputy Commissioner Berger, including the deposition transcripts of Dr. Friedman, Dr. Finkel and Dr. Gualtieri and the transcript from the hearing filed 22 January 1996.
11. The parties stipulated to plaintiffs medical records from Duke University Medical Center, Cape Fear Memorial Hospital, North Carolina Neuropsychiatry, Durham Clinic, P.A., and the IBM medical department.
12. Subsequent to the initial hearing, the parties submitted stipulated medical records including a 14 August 1995 letter from Dr. Friedman.
13. The parties stipulated to a set of documents supporting plaintiffs notice of appeal.
***********
Based upon all the evidence adduced from the record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the compensable injury by accident, plaintiff was employed as an intern while going to college to obtain an undergraduate degree. Plaintiffs job duties included handling reject parts.
2. On 9 April 1991, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer when he slipped on some water and hit his head on a cement floor.
3. Prior to the injury by accident on 9 April 1991, plaintiff had a pre-existing condition that involved a malformation of the brain in the area where the brain enters a hole into the spinal cord. This condition, described as a "Chiari malformation, is extra brain tissue from the cerebellum that pinches the spinal cord. This pre-existing condition was asymptomatic prior to the 9 April 1991 injury by accident.
4. As a result of the 9 April 1991 injury by accident, plaintiffs pre-existing Chiari malformation was exacerbated to the extent that plaintiff began to suffer headaches.
5. As a result of the 9 April 1991 injury by accident, plaintiff sustained a post-concussive syndrome with associated problems of neuropsychological dysfunction. These problems include constant headaches and occasional blackouts.
6. On 25 May 1993, Dr. Alan Friedman, a neurosurgeon, performed a suboccipital craniectomy with a C1-2 laminectomy and decompression of a Chiari malformation with a dural graft.
7. Plaintiff was medically able to return to work as of 23 February 1994. Plaintiffs former job was still available to plaintiff as of 23 February 1994, as well as by 25 April 1994, when he was told by Dr. Friedman that he was released with restrictions to return to work.
8. As of 1 August 1995, plaintiff had reached maximum medical improvement with regard to his neck injury.
9. As a result of the 9 April 1991 compensable injury by accident, plaintiff sustained a twenty percent (20%) permanent partial disability to his neck.
10. As of 31 May 1995, plaintiff had reached maximum medical improvement with regard to the post-concussive syndrome plaintiff sustained to his brain.
11. As a result of the 9 April 1991 compensable injury by accident, plaintiff sustained a permanent disability to his brain.
12. Plaintiff testified that he continues to have headaches and that he began to experience more blackouts after April 1994. However, he also testified that he has a valid North Carolina drivers license and drives himself as needed, including traveling from Wilmington to Durham.
13. Dr. Alan Finkel, a neurologist, testified that he had previously diagnosed plaintiff with post-concussive syndrome with headaches and had previously identified loss of consciousness when he treated plaintiff in 1993 and 1994. In Dr. Finkels second deposition, which was taken in 1998, Dr. Finkel stated that plaintiffs physical and mental conditions had changed and that plaintiff was more distraught, but Dr. Finkel ascribed some of that to the fact that plaintiffs medications had been changed. Regarding plaintiffs blackout spells, Dr. Finkel stated that they seemed to be less frequent and that his corresponding pain was less severe. Dr. Finkel also stated that it did not take much for plaintiff to decompensate emotionally or become angry and that plaintiffs employment ability is "essentially nil. Nevertheless, Dr. Finkel also opined that there has been no significant change in plaintiffs physical abilities.
14. In June 1998, Dr. Alan H. Friedman, a neurosurgeon, was unable to testify to a reasonable degree of medical certainty regarding whether plaintiffs blackouts of April 1994 were a new condition. Dr. Friedman also reviewed his July 1995 deposition and noted that his opinion as of that date would be more accurate concerning plaintiffs condition than that presented in his deposition in 1998 and that he had not been presented with any new information in 1998 to affect his previous testimony during his 1995 deposition.
15. Notwithstanding Dr. Finkels opinions, the evidence fails to establish that plaintiff has suffered a change in condition affecting his physical capacity to earn wages.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. As found in the previous decision of the Full Commission filed 26 September 1996, plaintiff was not justified in refusing to return to work after his release by Dr. Friedman on 25 April 1994. No evidence has been presented to the contrary. G.S. 97-32.
2. Plaintiff is entitled to and has previously received total disability compensation at a rate of $141.69 per week for the time period beginning 11 March 1994 through 25 April 1994. G.S. 97-29.
3. Plaintiff has previously received partial disability compensation for 60 weeks at a compensation rate of $141.69 per week for a 20% permanent partial disability plaintiff sustained to his neck as a result of the compensable injury. G.S. 97-31(23).
4. Plaintiff has received $5,000.00 for permanent injury to his brain. G.S. 97-31(24).
5. Plaintiff is entitled on a continuing basis to have defendants provide all medical treatment arising from his injury by accident to the extent that such treatment tends to affect a cure, give relief, or lessen plaintiffs disability. G.S. 97-25.
6. Change of condition refers to conditions different from those existent when the initial award was made. A continued incapacity of the same kind and character and for the same injury is not a change of condition; the change must be actual, and not a mere change of opinion with respect to the pre-existing condition. Haponski v. Constructors,Inc., 87 N.C. App. 95, 360 S.E.2d 109 (1987). In determining if a change of condition has occurred, entitling an employee to additional compensation under this section, the primary factor is a change in condition affecting the employees physical capacity to earn wages. Lucasvs. Bunn Mfg. Co., 90 N.C. App. 401, 368 S.E.2d 386 (1988). Plaintiff has failed to show by competent medical evidence that his compensable work-related injury has significantly or substantially changed or changed in any manner since the Opinion and Award of the Full Commission filed on 26 September 1996, which established that plaintiff had unjustifiably failed to accept suitable employment following his physicians release for plaintiff to return to work. G.S. 97-47.
***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiffs claim that he has undergone a change of condition entitling him to further indemnity benefits pursuant to the Workers Compensation Act is DENIED.
2. Defendants shall continue to be responsible for any medical treatment causally related to the compensable injury by accident, to the extent that such treatment tends to affect a cure, give relief, or lessen plaintiffs disability.
3. Each side shall pay its own costs, except that defendants shall pay expert witness fees of $180.00 to Dr. C. Thomas Gualtieri and $195.00 to Dr. Finkel, if not previously paid.
This the day ___ of September 2000.
S/_______________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_______________ LAURA K. MAVRETIC COMMISSIONER
DISSENTING:
S/_______________ Christopher Scott COMMISSIONER