## POE v. RALEIGH/DURHAM AIRPORT AUTHORITY

[121 N.C. App. 117 (1995)]

DAN POE, JR., Employee-Plaintiff v. RALEIGH/DURHAM AIRPORT AUTHORITY, SELF-INSURED, (HEWITT, COLEMAN & ASSOC.), Employer-Defendant, and/or BRITT SERVICES COMPANY, Employer-Defendant, AETNA CASUALTY & SURETY CO., Carrier-Defendant

No. COA94-1425

(Filed 19 December 1995)

1. **Workers' Compensation § 117 (NCI4th)— pre-existing injury—temporary flare-up resulting from incident—incident not cause of disability**

   The evidence was sufficient to sustain the Industrial Commission's finding that plaintiff suffered a temporary flare-up of a pre-existing injury as a result of a lawn mowing incident and its conclusion that plaintiff was not disabled as a result of the incident.

   **Am Jur 2d, Workers' Compensation §§ 317-319.**

   **Workers' compensation: liability of successive employers for disease or condition allegedly attributable to successive employments. 34 ALR4th 958.**

   **Eligibility for workers' compensation as affected by claimant's misrepresentation of health or physical condition at time of hiring. 12 ALR5th 658.**

2. **Workers' Compensation § 426 (NCI4th)— change of condition warranting review—failure to Commission to find—error**

   The Industrial Commission erred in concluding that plaintiff did not sustain a substantial change of condition from his original compensable accident which would warrant a review by the Industrial Commission of its previous awards, and that plaintiff was not entitled to receive payment for any medical expenses incurred or to be incurred after a named date where the evidence clearly showed that plaintiff suffered a compensable work related injury and then a temporary flare-up of his pre-existing injury, and he was subsequently unable to find another job due to his severe physical restrictions, coupled with his vocational and educational limits.

   **Am Jur 2d, Workers' Compensation §§ 708-711.**

### 3. Workers' Compensation § 89 (NCI4th)— designation of deputy commissioners to review appeal—no error

The Chairman of the Industrial Commission did not err in designating two deputy commissioners to participate in the review of plaintiff's appeal, since all of the panel members were duly vested with authority to render a decision, and the appointment of two deputy commissioners did not violate N.C.G.S. § 97-85.

**Am Jur 2d, Workers' Compensation §§ 689, 690, 709, 710.**

### 4. Workers' Compensation § 421 (NCI4th)— agreements for compensation—applicability of change of condition statute—liability for medical expenses

Although there had never been a hearing or an award, *per se*, by the Industrial Commission prior to the present opinion and award, this lack of formality did not prohibit application of the substantial change of condition standard of N.C.G.S. § 97-47 to plaintiff's claim where plaintiff had been paid benefits for periods of temporary total disability in the past and agreements for those benefits had been approved by the Industrial Commission. Furthermore, plaintiff was not required to make any showing of change of condition in order for his employer to be required to pay for further medical services or treatment needed as result of his compensable injury.

**Am Jur 2d, Workers' Compensation §§ 435, 444.**

**Insured's receipt of or right to workmen's compensation benefits as affecting recovery under accident, hospital, or medical expense policy. 40 ALR3d 1012.**

**Applicability of other insurance benefits exclusion, from coverage of hospital or health and accident policy, to governmental insurance benefits to which insured would have been entitled by prior subscription. 29 ALR4th 361.**

Appeal by plaintiff from Opinion and Award entered 15 August 1994 by the North Carolina Industrial Commission. Heard in the Court of Appeals 3 October 1995.

**POE v. RALEIGH/DURHAM AIRPORT AUTHORITY**

[121 N.C. App. 117 (1995)]

*Leonard T. Jernigan, Jr., P.A., by Leonard T. Jernigan, Jr. and N. Victor Farah, for plaintiff-appellant.*

*Gene Collinson Smith for defendant-appellee Raleigh/Durham Airport Authority.*

*Russell & King, P.A., by Gene Thomas Leicht and Sandra M. King, for defendants-appellees Britt Services Company and Aetna Casualty & Surety Company.*

JOHNSON, Judge.

Plaintiff Dan Pope is a fifty-two (52) year old man with a fifth grade education and a learning disability. Because of his lack of education and cognitive problems, plaintiff has a severely restricted vocational status.

Plaintiff began working for defendant RDU in 1985, in defendant's janitorial and maintenance department. On 3 May 1988, plaintiff suffered an admittedly compensable injury to his lower back, by accident arising out of and in the course of his employment with defendant RDU. As a result of the May 1988 incident, plaintiff was not able to work from 5 May 1988 through 31 May 1988. During this time period, defendant RDU made temporary total disability compensation payments to plaintiff pursuant to an approved Industrial Commission Form (I.C. Form) 21 Agreement.

Plaintiff returned to work on 31 May 1988, but, in June 1988, fell into a hole while mowing grass during and in the course of employment with defendant RDU, and re-injured his lower back. Consequently, plaintiff was unable to work for approximately five weeks, beginning 22 June 1988. Defendant RDU paid plaintiff additional temporary total disability compensation pursuant to an I.C. Form 26 Agreement.

Again, plaintiff returned to work only to re-injure himself in a compensable on-the-job accident on 18 August 1988. On 31 August 1988, Dr. Stephen Boone performed surgery on plaintiff's lower back to repair a herniated disk at L4-5. Plaintiff received workers' compensation benefits pursuant to an I.C. Form 26 Agreement, until his return to work on 1 November 1988. Thereafter, plaintiff's condition failed to improve. Plaintiff continued to experience severe lower back pain and developed right leg pain and numbness—a symptom plaintiff had not experienced prior to surgery. Less than eight (8) months after the first operation, in April 1989, Dr. Boone again operated on

plaintiff's back to remove a large recurrent herniated disk at L4-5. As a result of this second operation, plaintiff was once again disabled and was paid workers' compensation benefits for this temporary total disability pursuant to an approved I.C. Form 26 Agreement, from 24 April 1989 through 2 January 1990. On 2 June 1989, Dr. Boone assigned a permanent partial disability rating of fifteen percent (15%) to plaintiff's back.

After the second surgery was performed on plaintiff's back, his complaints of lower back and right leg pain and numbness persisted. Thereafter, plaintiff was examined by Dr. Robert Price, who placed plaintiff on a work hardening program. Though the program was supposed to enable plaintiff to return to normal activities, it did not. An MRI of plaintiff's spine, performed in October 1989, revealed formation of postoperative scar tissue, but no recurrent herniation or spinal stenosis. In December 1989, Dr. Price recommended two additional weeks of work hardening. After the two additional weeks of work hardening in January 1990, due to plaintiff's persistent complaints, Dr. Price scheduled plaintiff for a series of spinal epidural injections, after which plaintiff was told that he could return to work with the restriction that he not lift more than forty (40) pounds for two months.

Plaintiff and defendant RDU entered into a fourth approved I.C. Form 26 Agreement for the payment of additional temporary total disability compensation, beginning 17 January 1990 and continuing thereafter as necessary. Despite plaintiff's complaints of lower back and right leg pain, plaintiff returned to work at RDU in February 1990, where he performed light duty tasks until he was terminated, without explanation, in April 1990.

Plaintiff contends that he was forced to return to work in February 1990. Further, plaintiff explained that he was instructed by his supervisor not to voice any further complaints about his back. Additionally, plaintiff was warned by his supervisor that his job performance would be re-evaluated and that he would have to prove himself worthy of continued employment with defendant RDU. Finally, plaintiff alleges that he was prohibited by defendant RDU from seeking any further medical treatment during work hours. At the time that plaintiff was terminated by defendant RDU, he was still experiencing back and leg pain. In fact, plaintiff was taking Darvocet, Percodan, Valium, as well as numerous over-the-counter medications for pain relief.

POE v. RALEIGH/DURHAM AIRPORT AUTHORITY

[121 N.C. App. 117 (1995)]

Approximately three weeks after being terminated by defendant RDU (late April 1990), plaintiff obtained employment with defendant Britt Services Company (Britt Services), where he worked as a mower operator. After being hired by Britt Services, plaintiff continued to experience the same complaints that he had been experiencing since his initial injury and surgery in 1988. On 6 August 1990, plaintiff ran across a metal stob while mowing the grass at work. Upon hitting the stob, the mower that plaintiff was driving, stalled, and plaintiff was thrown forward toward the steering wheel. When thrown forward, plaintiff felt a sharp pain—"an instant jerk." After this incident, plaintiff reported more pain in his back at the end of the work day. Plaintiff's right leg was still numb.

Approximately one week following the mower incident, 14 August 1990, plaintiff was treated by his family physician, Dr. Walter Minor, for lower back pain and leg numbness. Dr. Minor's notes from the 14 August visit indicate that the 6 August mower accident caused plaintiff's leg numbness and back pain. Thereafter, plaintiff did not seek any further medical treatment related to lower back and right leg complaints, until April 1991. Plaintiff testified that he continued to work through November 1990, in spite of the pain, because he needed money to make mortgage payments on his home. On 16 April 1991, plaintiff was seen by Dr. Kaspar Fuchs, a neurosurgeon, who performed a lumbar CT scan, which revealed abnormal soft tissue density in the right lateral recess of disc L4-5. A subsequent lumbar MRI scan revealed a recurrent disk herniation in plaintiff's back.

Plaintiff was referred to Dr. Samuel E. St. Clair, a neurosurgeon, who performed yet another MRI study in October 1991. Subsequently, Dr. St. Clair performed a third lumbar surgical procedure on 11 October 1991. Following that operation, an additional five percent (5%) permanent partial disability rating was issued by Dr. St. Clair to plaintiff's back. Plaintiff has not worked since he left the employ of defendant Britt Services, at the end of the grass mowing season, in November 1990.

Plaintiff re-opened his claim against defendant RDU by filing a Form 33 Request for Hearing on 15 November 1991. On 15 April 1992, the North Carolina Industrial Commission added Britt Services and its workers' compensation carrier, Aetna Casualty & Surety Company, as additional defendants, based upon the allegation that plaintiff suffered subsequent injury by accident while employed by defendant

Britt Services. Plaintiff filed a Form 18 claim against Britt Services on 8 July 1992.

This matter was heard by Deputy Commissioner Gregory M. Willis on 23 September 1993. On 2 September 1994, Deputy Commissioner Willis entered an Opinion and Award denying plaintiff's claims against defendant RDU and defendant Britt Services. Thereafter, plaintiff filed a timely Notice of Appeal to the Full Commission.

The Full Commission filed its Opinion and Award on 15 August 1994, affirming Deputy Commissioner Willis' Opinion and Award. Deputy Commissioner Charles A. Clay filed a dissenting opinion. Plaintiff filed Notice of Appeal to this Court on 16 September 1994 and the appeal was, subsequently, timely perfected.

[1] Plaintiff first assigns as error the Full Commission's Finding of Fact that he was not disabled as a result of the 6 August 1990 accident, since it was not supported by the evidence in the record. Further, plaintiff argues that the finding that there had been a "temporary flare-up" of his condition was an insupportable medical assumption. We do not agree.

On appellate review in workers' compensation cases, our Court's inquiry is limited to whether there is any competent evidence to support the Industrial Commission's findings and whether the Commission's findings support its conclusions. *Watkins v. City of Asheville*, 99 N.C. App. 302, 303, 392 S.E.2d 754, 756, *disc. review denied*, 327 N.C. 488, 397 S.E.2d 238 (1990) (*quoting Dolbow v. Holland Industrial*, 64 N.C. App. 695, 696, 308 S.E.2d 335, 336 (1983), *disc. review denied*, 310 N.C. 308, 312 S.E.2d 651 (1984)). If a finding of fact is a mixed question of fact and law, the Commission's finding is not binding on appeal. *See Haponski v. Constructor's, Inc.*, 87 N.C. App. 95, 360 S.E.2d 109 (1987). In *Haponski*, this Court confronted the issue of causation where plaintiff had suffered an injury and thereafter began to suffer psychological problems. Therein, this Court held that a finding concerning causation of that plaintiff's disability was a mixed question of law and fact. *Id.* However, if there is sufficient evidence to sustain the facts involved, the North Carolina Supreme Court has found that such a mixed finding will also be conclusive on appeal. *Lewter v. Enterprises, Inc.*, 240 N.C. 399, 403, 82 S.E.2d 410, 413 (1954) (*citing Perley v. Paving Co.*, 228 N.C. 479, 46 S.E.2d 298 (1948); *Beach v. McLean*, 219 N.C. 521, 14 S.E.2d 515 (1941); *Thomas v. Gas Co.*, 218 N.C. 429, 11 S.E.2d 297 (1940)). The

POE v. RALEIGH/DURHAM AIRPORT AUTHORITY

[121 N.C. App. 117 (1995)]

Full Commission, in its Opinion and Award, adopted and affirmed Deputy Commissioner Willis' Findings of Fact. Plaintiff takes issue with the following findings:

> 11. The incident on 6 August 1990 was an interruption of plaintiff's regular work routine by unusual circumstances which resulted in unexpected consequences, and the incident exacerbated a pre-existing condition by causing an increase in back and leg pain. However, the exacerbation was a temporary flare-up which did not cause plaintiff to be unable to be gainfully employed for any period of time.
>
> . . .
>
> 14. Dr. Jariwala ordered a x-ray of plaintiff's lumbar spine in January 1991, this would be between the August 1990 incident with Britt Services and the later MRI of June 1991. At the time of the January 1991 x-ray: there was mild indentation of the endplates at inferior aspects of disks L3, L4, L5, which were not of clinical significance; there was faint calcification centrally within the disk space at level L5-S1, which was also not of clinical significance; and the vertebral bodies and their appendages were outlined normally and there was no disk reduction.
>
> . . .
>
> 24. The undersigned finds limited weight in the testimony and opinions of Stephen Carpenter because of his heavy reliance on restrictions placed on plaintiff's activities only days after his surgery, when it is clear that those restrictions were not intended to be permanent.

The Commission concluded, therefore, that plaintiff had not been disabled as a result of the 6 August 1990 incident and that plaintiff had not experienced a substantial change of condition from his 3 May 1988 on-the-job accident.

The evidence tends to show that plaintiff, who had a pre-existing back problem due to an admittedly compensable injury in May 1988, was engaged in the work of his employer, defendant Britt Services, when an unanticipated event occurred, throwing plaintiff forward and thus, wrenching his previously injured back. Plaintiff testified during the hearing before Deputy Commissioner Willis that he continued to work in spite of nagging pain, because he desperately needed money so that he would not lose his home. Plaintiff was seen

by his family physician, Dr. Minor, after the accident and reported that he was experiencing increased back and leg problems. Plaintiff did not, however, seek further medical treatment for these complaints until 16 April 1991, when he was seen by Dr. Fuchs, a neurosurgeon. Thereafter, plaintiff was referred to another neurosurgeon, Dr. St. Clair, who performed a third lumbar surgical procedure on plaintiff on 11 October 1991.

[2] As the evidence was sufficient to sustain the Commission's finding that plaintiff had suffered a temporary flare-up of a pre-existing injury, as a result of the 6 August 1990 incident, and its conclusion that plaintiff was not disabled as a result of the 6 August incident, we affirm the Commission's finding and conclusion in this regard. We cannot, however, agree with the Commission's conclusions that plaintiff did not sustain a substantial change of condition from his accident of 3 May 1988 which would warrant a review by the Industrial Commission of its previous awards, and that plaintiff was not entitled to receive payment for any medical expenses incurred or to be incurred after April 1991. In support of these conclusions, the Commission made the following Findings of Fact:

23. . . . Regarding the accident of 3 May 1988, the undersigned finds that plaintiff's physical condition after November 1990 was not a substantial change of condition caused by the accident of 3 May 1988[.] This finding is based on the following: (1) there is no opinion from an expert, to a reasonable degree of medical certainty, that plaintiff's condition after November 1990 was a natural and probable consequence of the injury by accident of 3 May 1988 and that his condition after November 1990 was a substantial change of condition from the previous accident; and (2) there was a substantial period of time between plaintiffs [sic] return to work from the first accident and the discovery of a recurrent herniated disk in June 1991.

24. The undersigned finds limited weight in the testimony and opinions of Stephen Carpenter because of his heavy reliance on restrictions placed on plaintiff's activities only days after his surgery, when it is clear that those restrictions were not intended to be permanent.

25. Any medical treatment plaintiff received after April 1991 was not necessary to effect a cure, to provide relief, or to lessen any period in which plaintiff was unable to be gainfully employed, as a result of the accident of 3 May 1988.

Whether the facts as found by the Commission amount to a change of condition pursuant to section 97-47 of the North Carolina General Statutes is a question of law and is, therefore, reviewable by our Court. *See Weaver v. Swedish Imports Maintenance, Inc.*, 319 N.C. 243, 354 S.E.2d 477 (1987). Further, it is well settled that disability under the Workmen's Compensation Act speaks to a diminished capacity to earn money, not to physical infirmity. *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 435, 342 S.E.2d 798, 804 (1986) (*citing Ashley v. Rent-A-Car Co.*, 271 N.C. 76, 84, 155 S.E.2d 755, 761 (1967)). Finally, "[a] capable job seeker whom no employer needing workers will hire is not employable." *Bridges v. Linn-Corriher Corp.*, 90 N.C. App. 397, 400, 368 S.E.2d 388, 390, *disc. review denied*, 323 N.C. 171, 373 S.E.2d 104 (1988).

The facts in the instant case indicate that plaintiff sustained an injury to his back on 3 May 1988 while performing certain tasks for his employer, defendant RDU. Defendant RDU has paid plaintiff for periods of temporary total disability pursuant to I.C. Forms 21 and 26 (five in total). Further, on 6 August 1990, plaintiff did re-injure his back during and in the course of employment with defendant Britt Services, which caused a "temporary flare-up" of plaintiff's pre-existing injury. Plaintiff was seen by his family physician after this accident and reported that he was experiencing increased back and leg problems. Plaintiff later sought further medical treatment some eight months later. On 16 April 1991, plaintiff was seen by Dr. Fuchs, a neurosurgeon. Subsequently, on 11 October 1991, Dr. St. Clair, another neurosurgeon, performed a third operation on plaintiff's injured back. Plaintiff had left the employ of defendant Britt Services in November 1990.

The evidence indicates that, after leaving Britt Services, plaintiff was unable to find another job, due to his severe physical restrictions, coupled with his vocational and educational limits. Plaintiff is a fifty-two (52) year old functional illiterate. There is an abundance of medical and other expert opinion that plaintiff is unable to earn any wages, in the kind of work he did, or any other type of job. The Commission's reliance on *Click v. Freight Carriers*, 300 N.C. 164, 265 S.E.2d 389 (1980), is misplaced. *Click* stands for the proposition that expert medical testimony will be required to establish causation in the more complicated cases involving disc injuries.

In the case *sub judice*, the record is rife with testimony that plaintiff suffered a compensable work-related injury on 3 May 1988, which

caused damage to the lumbar region of plaintiff's back. If the Commission was able to determine that the accident on 6 August 1990 caused a "temporary flare-up" of plaintiff's pre-existing injury, it follows that plaintiff's change in wage earning capacity must be a result of that same pre-existing injury. The Commission's findings and conclusions to the contrary are unsupported by the evidence and must, therefore, be reversed.

[3] Plaintiff also argues that the Full Commission lacked jurisdiction to review his appeal, as two deputy commissioners participated in the review, in violation of North Carolina General Statutes section 97-85. For this reason, the plaintiff contends that the final Opinion and Award of the Industrial Commission is void as a matter of law. Notably, plaintiff poses this collateral attack for the first time on appeal; plaintiff failed to raise any objection to the panel's composition at the Full Commission level. We find this argument to be without merit.

"The Commission acts by a majority of votes of its qualified members at the time a decision is made," and a vote of two members constitutes a majority. *Estes v. N.C. State University*, 117 N.C. App. 126, 128, 449 S.E.2d 762, 764 (1994) (*citing Gant v. Crouch*, 243 N.C. 604, 607, 91 S.E.2d 705, 707 (1956)). North Carolina General Statutes section 97-85 states in pertinent part:

> Provided further, the chairman of the Industrial Commission shall have the authority to designate a deputy commissioner to take the place of a commissioner on the review of any case, in which event the deputy commissioner so designated shall have the same authority and duty as does the commissioner whose place he occupies on such review.

N.C. Gen. Stat. § 97-85 (1991). Plaintiff references *Estes* in support of his argument. His reliance on *Estes* is, however, misplaced. The Commission panel in *Estes* consisted of three Full Commissioners at the time of the original hearing. However, when the Opinion and Award was signed and filed, one of the Commissioners who had participated in the decision was no longer a qualified Commissioner because his term had expired. Our Court, therefore, held that the decision of the Full Commission was void as a matter of law. *Estes*, 117 N.C. App. 126, 449 S.E.2d 762.

In the instant case, the presiding panel of the Commission consisted of Chairman J. Howard Bunn, Jr., Deputy Commissioner W.

Joey Barnes, and Special Deputy Commissioner Clay. Unlike *Estes*, all of the panel members in this case were duly vested with authority to render a decision. Plaintiff argues, however, that while the Commissioner may have had authority to replace one commissioner with a designated deputy commissioner, he did not have the authority to replace two commissioners, as was the case herein. Plaintiff is correct in his statement that there is no express statutory authority for the substitution of two Commissioners, but then neither is there a statutory provision in the Workers' Compensation Act expressly prohibiting such action. We must believe that if our legislators intended such restrictions on the Commissioner's authority, they would have expressly provided for such. We simply should not interpret section 97-85 to give it such a stringent and confining meaning, which is arguably in contravention of legislative intent. Thus, we find plaintiff's argument, with regards to this issue, to be without merit.

[4]   Plaintiff argues in his final assignment of error that the Commission applied an improper standard in evaluating his claim. First, plaintiff contends that North Carolina General Statutes section 97-47 does not apply to the instant case, as a final award has not been entered. Additionally and/or alternatively, plaintiff argues that additional expert testimony was not necessary to show a change in his condition.

Section 97-47, entitled "Change of condition; modification of award," provides in pertinent part:

> Upon its own motion or upon the application of any party in interest on the grounds of a change in condition, the Industrial Commission may review any award, and on such review may make an award ending, diminishing, or increasing the compensation previously awarded, subject to the maximum or minimum provided in this Article . . . .

N.C. Gen. Stat. § 97-47 (1991). In *Watkins v. Motor Lines*, our Supreme Court specifically stated, "[t]he Commission's authority under this statute is *limited to review of prior awards*, and the statute is inapplicable in instances where there has been no previous final award." 279 N.C. 132, 137, 181 S.E.2d 588, 592 (1971) (*citing Biddix v. Rex Mills*, 237 N.C. 660, 75 S.E.2d 777 (1953); *Pratt v. Upholstery Co.*, 252 N.C. 716, 115 S.E.2d 27 (1960)). However, this Court, in *Weaver v. Swedish Imports Maintenance, Inc.*, found that the "substantial change in condition" standard in section 97-47 was

applicable, where plaintiff, who had received temporary total disability benefits under section 97-29 for a compensable heart attack, was awarded permanent partial disability under section 97-30 when he applied for modification of his prior award following three additional heart attacks. 80 N.C. App. 432, 343 S.E.2d 205 (1986), *modified*, 319 N.C. 243, 354 S.E.2d 477 (1987).

The facts in the instant case indicate that plaintiff sustained an injury to his back on 3 May 1988 while performing certain tasks for employer, defendant RDU. Defendant RDU has paid plaintiff disability benefits for periods of temporary total disability pursuant to I.C. Forms 21 and 26 (five in total). All of these agreements between plaintiff and defendant RDU have been approved by the Industrial Commission. Plaintiff filed a Form 33 Request for Hearing on 15 November 1991, after defendant RDU refused to compensate him for his disability and medical expenses after November 1990.

While there had never been a hearing or an award, per se, by the Industrial Commission prior to the Opinion and Award issued by Deputy Commissioner Willis on 2 September 1993, this lack of formality does not preclude section 97-47 from being applicable to a determination of compensation for plaintiff's disability. *See Weaver*, 80 N.C. App. 432, 343 S.E.2d 205. Plaintiff's argument does, however, strike a disconsonant chord, since our Supreme Court has specifically stated that it was not the intent of the legislature to require an injured employee to make any showing of a change in condition before his employer would be required to pay for further medical services or treatment needed as a result of his compensable injury. *See Hyler v. GTE Products Co.*, 333 N.C. 258, 425 S.E.2d 698 (1993). Therefore, to the extent that the Commission relied on section 97-47 in its denial of payment to plaintiff for medical services or treatment after April 1991, their action was erroneous and must be reversed.

For the foregoing reasons, the Full Commission's decision must be affirmed with respect to its finding that plaintiff suffered a "temporary flare-up" of a pre-existing injury as a result of the 6 August 1990 on-the-job accident. The Commission's decision is, however, reversed with respect to the Commission's finding that plaintiff did not sustain a substantial change in condition as a result of the 6 August accident, which would warrant a review of its previous awards; and remanded for further proceedings, not inconsistent with this opinion.

KIRK v. STATE OF N.C. DEPT. OF CORRECTION

[121 N.C. App. 129 (1995)]

Affirmed in part, reversed in part, and remanded.

Judges EAGLES and WALKER concur.