***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Taylor. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Taylor.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties were properly before the Full Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. The employer-employee relationship existed between the defendant-employer and the plaintiff at all relevant times herein.
3. The date of the injury subject to this claim is July 1, 2002.
4. The employer was self-insured with Gallagher Bassett Services serving as the third party administrator at all relevant times herein.
5. The parties stipulate to the following exhibits: (a) All medical records related to Plaintiff's injury, and (b) the Industrial Commission Forms 19, 25N, 33, 33R, and 61.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Since 1979, Plaintiff has worked in the racing industry. For the past one-and-one half years, Plaintiff worked as a race car engine tuner for Defendant-Employer.
2. Plaintiff had back problems that pre-existed his injury on July 1, 2002. However, these pre-existing problems were all minor and resolved quickly. In 1978, Plaintiff pulled a muscle in his back while self-employed. In approximately 1993, he hurt his back while picking up a tire. In 1999, Plaintiff hurt his neck. These pre-existing problems required only a few medical appointments each and were managed conservatively by Plaintiff's treating neurosurgeon, Dr. Jerry Petty.
3. On July 1, 2002, Plaintiff was working with Defendant-Employer, which required him to prepare race cars for racing at various locations throughout the country. Plaintiff was preparing a car for a Daytona race when he lifted a tire and felt a sting in his back around lunchtime. In this incident, his back popped. Plaintiff experienced numbness and pain which radiated into his legs and got progressively worse as time went on. Nevertheless, Plaintiff traveled by car to Daytona for the race.
4. Plaintiff returned to North Carolina the following Sunday. Soon after the incident, Plaintiff informed some of his co-employees about the origin of his pain, including Roger Purcell and Earl Barber. Plaintiff also told Glenda Goodman, a secretary at Defendant-Employer's engine shop in Concord, North Carolina. Although Plaintiff did not work at the engine shop (he worked at Defendant-Employer's car shop, one of Defendant-Employer's three places of business in North Carolina), Ms. Goodman signed his checks, and Plaintiff reported to her while he was traveling to races.
5. Ms. Goodman acknowledged Plaintiff's report of an injury while he was in Daytona and actually saw Plaintiff when he visited her upon returning from Daytona. Because Plaintiff appeared to be in such pain, Ms. Goodman recommended that he go to a doctor. Plaintiff mentioned that he could see Dr. Petty, who had treated him before, and Ms. Goodman authorized him to do so.
6. Ms. Darlene DeRosa Pressley, Defendant-Employer's human resources director, testified at the hearing before the Deputy Commissioner that she was first notified of Plaintiff's injury on July 17, 2002. However, Ms. Goodman testified at the hearing before the Deputy Commissioner that she told Ms. Pressley of Plaintiff's injury before this date.
7. On July 18, 2002, Plaintiff presented to Dr. Petty for a physical examination. Dr. Petty ordered an MRI based on Plaintiff's decreased sensation, possible weakness, hypoactive reflexes, and trouble with Plaintiff's range of motion, mainly with bending.
8. On July 30, 2002, Plaintiff returned to Dr. Petty and the MRI was interpreted to show degenerative changes in Plaintiff's spine, including stenosis and bulging discs at L2-3, L3-4, and L4-5. Dr. Petty recommended epidural steroid injections for Plaintiff and also discussed surgical intervention due to the symptoms Plaintiff had experienced since his injury on July 1, 2002.
9. Plaintiff was advised that epidural steroid injections are not guaranteed to provide relief. For this reason, Plaintiff decided to not undergo these injections.
10. At the time of the hearing before the Deputy Commissioner, Plaintiff was not yet disabled from his injury of July 1, 2002. He continued to work at Daytona during the week following this injury and in Chicago during the week that followed the Daytona race. However, Plaintiff missed July 20 and 21 for a race in Loudon, because of his injury in July 2003. Plaintiff returned to work after these two days. These are the only days Plaintiff has missed from work since July 1, 2003.
11. Plaintiff's symptoms from his back injury come and go. Plaintiff has good days and bad days with his back pain. Although Plaintiff's pain is sometimes absent, he continues to have frequent back pain as a consequence of his injury on July 1, 2003. Plaintiff did not experience this back pain before his injury. Despite his back pain, Plaintiff continues to work.
12. Dr. Petty opined that although Plaintiff had pre-existing stenosis and bulging discs, the injury of July 1, 2003, aggravated these pre-existing conditions and caused Plaintiff to become symptomatic since that time. At the time of the hearing before the Deputy Commissioner, Plaintiff's symptoms have not resulted in a loss of wage earning capacity that would entitle him to disability compensation under N.C. Gen. Stat. §§ 97-28 and 97-29.
13. Dr. Petty recommended Plaintiff have surgery if he remains symptomatic. Dr. Petty opined Plaintiff's need for surgery is a proximate consequence of the specific traumatic incident he sustained on July 1, 2003, even though Plaintiff had underlying degenerative changes in his spine.
14. Plaintiff's testimony was corroborated by the testimony of Glenda Goodman. To the extent that the remaining witnesses' testimony can be construed to be inconsistent with the findings of fact made herein, this testimony is not deemed to be persuasive. The Full Commission finds the testimony of Plaintiff to be credible.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On July 1, 2002, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment and as a direct result of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2 (6).
2. As the result of Plaintiff's compensable injury, Plaintiff needs medical treatment, including the conservative measures and surgery recommended by Dr. Jerry Petty. See N.C. Gen. Stat. § 97-25. Plaintiff's reluctance to undergo some of this treatment does not result in a penalty against him, however, since Plaintiff is not receiving disability compensation, the Commission has not ordered Plaintiff to undergo such treatment, and Plaintiff is justified in not wanting to undergo such treatment at the present time. See N.C. Gen. Stat. § 97-25. In addition, the fact that Plaintiff's symptoms are not always present does not abate Defendants' liability for ongoing medical treatment, since such an inquiry deals not with the necessity of Plaintiff's surgery testified to by Dr. Petty but rather the question of whether a "change of condition" has occurred. See Hyler v. GTE Prod. Co., 333 N.C. 258, 260, 425 S.E.2d 283,286-287 (1996); Pomeroy v. Tanner Masonry, 151 N.C. App. 171, 182,565 S.E.2d 209, 216-217 (2002); Parsons v. The Pantry, Inc.,126 N.C. App. 540, 485 S.E.2d 867 (1997); Pittman v. Thomas Howard,122 N.C. App. 124, 130, 468 S.E.2d 283, 286-287 (1996); Poe v.Raleigh/Durham Airport Auth., 121 N.C. App. 117, 128, 464 S.E.2d 689,695-696 (1995) (all holding that "change of condition" standard under N.C. Gen Stat. § 97-47 is irrelevant to the employee's right to additional medical compensation under N.C. Gen Stat. § 97-25).
3. Plaintiff is not currently disabled. See N.C. Gen. Stat. § 97-2(9). Although he missed two days from work as the result of his injury in July 2003, this absence is not sufficient to invoke his right to total disability compensation under N.C. Gen Stat. § 97-29. See N.C. Gen. Stat. § 97-28.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Defendants shall authorize and pay for all medical treatment recommended by Dr. Jerry Petty for Plaintiff's compensable back injury of July 1, 2003, including but not limited to the epidural steroid injections and surgery once Plaintiff is ready to undergo these procedures. In addition, Defendants shall pay for all medical compensation already incurred by Plaintiff because of the injury on July 1, 2002.
2. Defendants shall pay the costs.
This the 6th day of October, 2004.
 S/ ______________________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/ ______________________ THOMAS J. BOLCH COMMISSIONER
 S/ ______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER